UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

RENEE CREDEUR

VERSUS

STATE OF LOUISIANA, ET AL.

CIVIL ACTION

NO. 14-637-JJB-RLB

### RULING

This matter is before the Court on a Motion for Summary Judgment (Doc. 13) brought by the defendant, the State of Louisiana through the Office of Attorney General ("DOJ").[1] The plaintiff, Renee Credeur, filed an opposition (Doc. 22) and the defendant filed a reply brief (Doc. 23). Also pending in this matter is a Motion for Leave to File a Sur-Reply (Doc. 24-1) brought by the plaintiff. Oral argument is unnecessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED**. Therefore, plaintiff's Motion for Leave to File a Sur-Reply (Doc. 24-1) is **MOOT**.[2]

**I. BACKGROUND**

The plaintiff, Renee Credeur ("Credeur"), was a litigation attorney in the DOJ's Medical Malpractice Section. In May 2010, Credeur underwent a kidney transplant and was granted an Americans with Disabilities Act ("ADA") accommodation to work from home for approximately six months. *Compl.* ¶ 4, 6, Doc. 1-1. In 2013, Credeur began having health problems due to complications from the kidney transplant. *Id.* at ¶ 4. As a result of those complications, Credeur utilized leave under the Family and Medical Leave Act ("FMLA") until it was exhausted in August 2013.

---

[1] On July 9, 2015, this Court dismissed the claims against James "Buddy" Caldwell. *Ruling*, Doc. 12.
[2] Although the court did not rule on the plaintiff's motion (Doc. 24-1), the court did review and consider the plaintiff's submitted sur-reply (Doc. 24-2) for purposes of this ruling.

1

In September 2013, Credeur sought the accommodation of working from home. *Id.* at ¶ 6; *see Email from Renee Credeur, Assistant Attorney Gen., to Glen Reynaud, Med. Malpractice Section Chief* (Sept. 12, 2013), Doc. 13-8. In support for this request, Credeur submitted a medical evaluation from her doctor, Dr. Douglas Slakey ("Dr. Slakey"). *Slakey Med. Evaluation*, Doc. 13-9. As per the DOJ's request, Dr. Slakey submitted a supplemental medical evaluation on September 30, 2013, stating that Credeur was released to work from home "subject to restrictions and modifications" and with the goal of "slowly incorporat[ing] herself back to office hours as she gains strength and endurance." *Letter from Dr. Slakey, to Neomie Savoy, Human Res. Manager, DOJ* (Sept. 30, 2013), Doc. 13-10. The DOJ granted Credeur's request to work from home, memorializing such agreement in an October 18, 2013, memorandum ("Strategy Memo"). *Mem. from Sonia Mallett, Dir. Litig. Div., to Glen Reynaud, Med. Malpractice Section Chief, and Renee Credeur, Assistant Attorney Gen.* (Oct. 18, 2013), Doc. 13-11.

The Strategy Memo set forth Credeur's responsibilities during her accommodation, including that she communicate with her supervisor Glen Reynaud ("Reynaud") regarding her work product and hours, and that she provide medical updates every 30 days. *Id.* at 2–3. From October 18 until December 11, 2013, Credeur did not submit the required medical updates. During this time period, the DOJ sent Credeur several follow-up requests for medical information. *See Email from Neomie Savoy, Human Res. Manager, to Renee Credeur, Assistant Attorney Gen.* (Jan. 6, 2014), Doc. 13-13 (ADA Supplemental Request). On February 27, 2014, Credeur submitted three conflicting medical evaluations from three separate doctors. Specifically, these evaluations conflicted regarding whether Credeur's medical condition warranted the accommodation of

2

working from home.[3] The DOJ sought clarification from Credeur regarding the conflicting medical evaluations:

> Although the Doctor's evaluations conflict in some areas, it appears that Dr. Ward will not release you to return to the office for six months. Your initial request to work from home was granted with the specific goal of reintegration of your normal work hours and duties. Unfortunately, it is not possible for a litigation attorney to work from home on a long term basis.
>
> Unless we receive an updated medical status evaluation from your current treating physical rehabilitation physician by Thursday, March 13, 2014, we will have no alternative but to reevaluate your employment with the Department of Justice considering your inability to perform the essential job functions of a litigation attorney.

*Email from Renee Free, Dir. Admin. Servs., to Renee Credeur, Assistant Attorney Gen.* (Feb. 27, 2014), Doc. 13-21.

On March 3, 2014, Renee Free ("Free"), the DOJ's Director of Administrative Services, scheduled a meeting with Credeur, Reynaud, and Human Resources to discuss several issues, including alleged performance deficiencies[4] and the conflicting medical evaluations. During the meeting, Credeur was asked to provide written confirmation that Dr. Ward was no longer her physician. *See Email from Renee Free, Dir. Admin. Servs., to Renee Credeur, Assistant Attorney Gen.* (Mar. 3, 2014), Doc. 13-23 (discussing the requirements as per that morning's meeting). Next, DOJ advised Credeur that due to the medical evaluation provided by her primary doctor (Dr.

---

[3] Dr. Weitz's evaluation indicated that Credeur could work in the office "as tolerated." *Weitz Med. Evaluation*, Doc. 13-18. Dr. Slakey's evaluation stated that Credeur could begin reintegrating herself into the office for 3–4 hours a day. *Slakey Med. Evaluation*, Doc. 13-19. Dr. Ward's evaluation, however, stated that Credeur would not be able to work in the office for six months. *Ward Med. Evaluation*, Doc. 13-20.

[4] At this time, Credeur had been permitted to work from home for approximately five months. DOJ alleges several performance deficiencies during the time Credeur worked from home. For example, while working from home Credeur failed to timely complete various administrative tasks required of all employees. *Reynaud Dep.* 144–49, Doc. 23-2; *see* Docs. 13-12 (driver authorization), 13-16 (safety training), 13-37 (time certificates). Next, the DOJ claimed it was burdensome to relay communication between Credeur and her clients or opposing counsel second or third hand because it was often difficult to reach Credeur by phone or email. *Reynaud Dep.* 36–41, 142–43, Doc. 23-2. Additionally, while working from home, Credeur's case assessments were sometimes late. *Id.* at 36–41. Finally, the DOJ was forced to hire outside counsel to take over one of Credeur's cases. *See Credeur Dep.* 76–77, Doc. 13-4. The only evidence Credeur provided to combat DOJ's allegations is deposition testimony of Reynaud stating that he never recommended Credeur be disciplined or terminated. *See Reynaud Dep.* 19–20, Doc. 22-3.

3

Slakey), Credeur would no longer be accommodated by working from home. *Id.* Instead, Credeur was required to work 3–4 hours per day in the office, with the goal of gradually working back to a full, in-office schedule. *Id.* Finally, Credeur was required to provide DOJ with medical updates every 30 days. *Id.* Following the March 3 meeting, Credeur did not begin reintegrating herself into the office as discussed in the meeting; she did not return to the office until March 20, 2014.

When Credeur returned to the office on March 20, the DOJ presented a Last Chance Agreement[5] to her. *Last Chance Agreement*, Doc. 13-26. This agreement discussed various deficiencies in Credeur's performance and corrective actions required of her. *See id.* Specifically, the agreement addressed Credeur's failure to provide written confirmation regarding Dr. Ward's medical evaluation. *Id.* It also addressed her work hour violations and billing practices, her failure to provide assistance to outside counsel hired to try one of her cases, and several instances of unprofessional and inappropriate emails that Credeur sent. *Id.* Although Credeur refused to sign the Last Chance Agreement,[6] the DOJ took no disciplinary actions against her.

In late March 2014, Credeur was hospitalized, and on April 7, 2014, Credeur requested to work from home. *Email from Renee Credeur, Assistant Attorney Gen., to Glen Reynaud, Med. Malpractice Section Chief* (Apr. 7, 2014), Doc. 13-30. Dr. Slakey provided a medical evaluation on April 22, which stated that Credeur could not work in the office or attend depositions, court hearings, or conferences. *Slakey Med. Evaluation*, Doc. 13-31. The evaluation also stated that there was no accommodation that would allow Credeur to work at the office until she was cleared of

---

[5] According to Sonia Mallett ("Mallett"), the DOJ's Director of Litigation Division, "The purpose of a 'Last Chance Agreement,' . . . is not a disciplinary action. It is rather something that, as an employer, we are able to put in place that makes the employee aware of the issues what we are having, so that it can be corrected." *Mallett Dep.* 86, Doc. 13-22. The DOJ has used Last Chance Agreements various times in the past with different employees, including attorneys. *Id.*; *Free Dep.* 85–86, Doc. 13-3.
[6] *Email from Renee Credeur, Assistant Attorney Gen., to Glen Reynaud, Med. Malpractice Section Chief* (Mar. 24, 2014), Doc. 13-27.

infection, which she would not be assessed for until May 20, 2014, and completed physical therapy. *Id.*

Credeur utilized FMLA leave from the time of her hospitalization until it expired in June; at that point Credeur went on unpaid leave.[7] On August 12, 2014, the DOJ denied Credeur's request to work from home—"As of your last medical evaluation on April 22, 2014, your doctor restricted all of your essential job functions as a litigation attorney. . . . Considering the most recent medical restrictions and the unreasonable strain it places on the office, your request to work from home has been denied." *Id.*

On August 22, 2014, Credeur was released to work at the office without restrictions. Credeur returned to work in the office and remained employed with the DOJ until she voluntarily resigned on December 31, 2014. Credeur filed suit against the DOJ alleging several violations of the Americans with Disabilities Act, as well as the corresponding Louisiana Employment Discrimination Law ("LEDL").[8] The defendant now brings the current motion seeking summary judgment on all of the plaintiff's claims.[9]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the

---

[7] While on unpaid leave, Credeur did not provide DOJ with any medical updates. *Letter from Renee Free, Dir. Admin. Servs., to Renee Credeur, Assistant Attorney Gen.* (Aug. 12, 2014), Doc. 13-32.

[8] "In interpreting Louisiana's anti-discrimination law, Louisiana courts look to federal employment discrimination law for guidance[.]" *Mitchell v. Tracer Constr. Co.*, 256 F. Supp. 2d 520, 530 (M.D. La. 2003). Because the analysis is the same under both statutes, the Court will address Credeur's claims under the ADA. Such analysis applies equally to Credeur's state law discrimination claims.

[9] The defendant's motion seeks summary judgment on the following claims: (1) FMLA; (2) ADA Failure to Accommodate; (3) ADA Harassment; (4) ADA Retaliation; and (5) constructive discharge. Summary judgement was also sought on the corresponding LEDL state claims. According to the plaintiff's opposition, she has not asserted a claim under the FMLA. *Pl.'s Opp'n* 11, Doc. 22. Additionally, the plaintiff has not properly plead a claim for constructive discharge. *Def.'s Supp. Mem.* 19, Doc. 13-1; *Pl.'s Opp'n* 12, Doc. 22 (listing only the three ADA claims and corresponding state law claims under a section titled, "Plaintiff's Claims"). Therefore, this ruling only addresses the three remaining ADA claims and the corresponding state law.

burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322–23.

### III. DISCUSSION

#### A. ADA Failure to Accommodate

To establish a prima facie case of ADA Failure to Accommodate, the plaintiff must show that (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by her employer; and (3) the employer failed to make a reasonable accommodation for such known limitations. *Neely v. PSEG Tex., L.P.*, 735 F.3d 242, 247 (5th Cir. 2013).

A "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Essential functions" of a job are the "fundamental job duties," not the "marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). Generally, "regularly attending work on-site is essential to most jobs, especially the interactive ones." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 761–62 (6th Cir. 2015). In determining a job's essential functions, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (stating that the determination of a job's "essential functions" is a "fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice"). Summary judgment should be granted "where an employer's judgment as to essential job functions—evidenced by the employer's words, policies, and practices and taking into account all relevant factors—is 'job-related, uniformly-enforced, and consistent with business necessity.'" *Ford Motor*, 782 F.3d at 765–66 (citing *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)).

Here, the summary judgment evidence is insufficient to support the first element of Credeur's ADA Failure to Accommodate claim—that Credeur is a qualified individual with a disability. There is no genuine dispute that an essential function of a DOJ Medical Malpractice litigation attorney is regular attendance in the office. First, DOJ's *words*—as demonstrated through the testimony of David Sanders ("Sanders"), Special Litigation Counsel, Human Resources

Advisor, and Litigation Director for the DOJ[10] and DOJ's correspondence with Credeur during the ADA interactive process[11]—evidences that Credeur's position was highly interactive and, consequently, regular in-office attendance is an essential function of her job. Specifically, Sanders testified as to the interactive nature of a litigation attorney:

> A defense of a lawsuit is a team effort by the attorney, by the paralegal, by the secretary. It's bouncing ideas off our colleagues. It's discussing strategy with the Section Chief. It's writing requests for settlement authority and discussing them with all of the above. *So, to me, that can only be done at the office.*"

*Sanders Dep.* 41:9–17, Doc. 22-3 (emphasis added). Although Credeur argues that regular attendance in the office is not an essential function of her job, an employee's subjective definition of the essential functions of their position are generally not credited. *See Ford Motor*, 782 F.3d at 764. Second, there is no genuine dispute that DOJ's *practices* support a similar conclusion. The summary judgment evidence shows that DOJ did not permit other attorneys to work from home on a long-term or permanent basis.[12] Finally, although DOJ has no written *policies* or job description explaining the essential functions of a litigation attorney, such descriptions are only relevant to the inquiry if they in fact exist. 42 U.S.C. § 12111(8) ("[I]f an employer has prepared a written description . . . , [then] this description shall be considered evidence of the essential functions of the job."). All of this evidence, taken together, supports the conclusion that an

---

[10] *See Sanders Dep.* 41, 22-3.

[11] *See Email from Renee Free, Dir. Admin. Servs., to Renee Credeur, Assistant Attorney Gen.* (Feb. 27, 2014), Doc. 13-21 (stating that "it is not possible for a litigation attorney to work from home on a long term basis" and that, being unable to begin reintegration at the office, Credeur was unable "to perform the essential job functions of a litigation attorney").

[12] Despite Credeur's assertion to the contrary, no reasonable juror could find, based on the summary judgment evidence, that the DOJ permitted other attorneys to work from home on a long-term basis. First, Mallet testified that she occasionally worked from home during the normal work day in her position as the Direction of Litigation Division. *Mallett Dep.* 17, Doc. 13-22. There is no evidence, however, that she ever worked from home on a long-term basis. Second, Mallett testified that she was aware of an employee in the Civil Division who was allowed to work from home, but she had no information regarding the specific circumstances. *Id.* 17–18, 20–21. Finally, although Schober testified that several "exempt" employees told her they worked from home, she did not know any details regarding those situations and clarified that these instances were not on a long-term basis. *Schober Dep.* 76, Doc. 23-1.

essential function of a DOJ litigation attorney is regular attendance in the office. Because no reasonable juror could find for Credeur on the first element of her ADA Failure to Accommodate claim, summary judgment is appropriate.

Additionally, no reasonable juror could find that the DOJ failed to reasonably accommodate Credeur's known limitations. A "reasonable accommodation" may include "job restructuring [and] part-time or modified work schedules." 42 U.S.C. 12111(9)(B). Therefore, DOJ's March 3, 2014, altered accommodation of having Credeur work in the office for 3–4 hours each day was a reasonable accommodation, as a part-time or modified work schedule. *See EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009) ("The ADA provides a right to reasonable accommodation, not the employee's preferred accommodation."); *Jenkins v. Cleco Power, L.L.C.*, 487 F.3d 309, 316 (5th Cir. 2007) ("A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously."). Additionally, a reasonable accommodation under the ADA does not include removing an essential function of the position; such accommodations are *per se* unreasonable. *Ford Motor*, 782 F.3d at 761. Thus, the DOJ did not fail to reasonable accommodation Credeur in August 2014 by denying her request to work from home.

### B.  ADA Harassment

A prima facie case of ADA Harassment requires proof of the following: (1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was because of the plaintiff's disability; and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment. The Fifth Circuit utilizes a very high standard for what conduct is considered severe or pervasive enough to create a hostile work environment. *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). "In

determining whether a work environment is abusive, this court must consider . . . 'the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.'" *Id.* (citations omitted).

Here, the summary judgment evidence is insufficient to support a claim for ADA Harassment. The Court fails to see how the conduct complained of constituted harassment. Regardless, even if such conduct was harassing, it fails to rise to the high level set forth by the Fifth Circuit for conduct sufficiently severe or pervasive to alter the terms or conditions of employment. Because no reasonable juror could find for Credeur on her ADA Harassment claim, summary judgment is appropriate.

    C.    ADA Retaliation

To establish a prima facie case for ADA Retaliation, the plaintiff must demonstrate that (1) she participated in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

For purposes of the plaintiff's prima facie case, an adverse employment action "is one that a reasonable employee would have found to be materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 495–96 (M.D. La. 2012) (citations omitted). For an action to be considered "adverse" it must go beyond "petty slights, minor annoyances, and simple lack of good manners." *Id.* at 496. Therefore, allegations of unwarranted complaints about the quality of the plaintiff's work and unnecessary job scrutiny and criticisms are not considered adverse employment actions. *Id.*

10

In this case, the summary judgment evidence is insufficient to support a claim for ADA Retaliation. Specifically, the evidence does not demonstrate that the DOJ took any adverse employment action against Credeur. The DOJ did not take an adverse employment action by modifying Credeur's ADA accommodation from "work at home" to "3–4 hours per day in the office." Such accommodation was reasonable and based on the current medical evaluation of Credeur's treating physician, Dr. Slakey. Additionally, the Last Chance Agreement was not an adverse employment action that would dissuade a reasonable worker from making a charge of discrimination. Instead, the agreement—which DOJ has previously used with other employees— set forth deficiencies in Credeur's job performance; complaints about the quality of an employee's work or job scrutiny are not considered adverse employment actions. *See Butler*, 838 F. Supp. 2d at 496. Because no reasonable juror could find for Credeur on the second element of an ADA Retaliation claim, summary judgement is appropriate.

## IV.    CONCLUSION

For the reasons stated above, the defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED**.  Therefore, plaintiff's Motion for Leave to File a Sur-Reply (Doc. 24-1) is **MOOT**.

The Court acknowledges that this is an unfortunate situation and has sympathy for the difficulties Credeur faced due to her medical issues. The law, however, does not support a finding of liability in this case.

Signed in Baton Rouge, Louisiana, on May 2, 2016.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**